UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WILLIAM J. ROPER (#502233)                             CIVIL ACTION

VERSUS

STEVE RADER, WARDEN                                 NO. 13-0572-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed a response in opposition to the petitioner's application. There is no need for oral argument or for an evidentiary hearing.

The petitioner, William J. Roper, challenges his conviction and sentence, entered in 2008 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of first degree robbery. The petitioner asserts as a single "Claim" that he has been "denied his constitutional rights to appellate review and to a complete copy of the record." *See* R. Doc. 1-1 at p. 6. In addition to that single Claim, the petitioner also includes, as "Issue[s] Presented," eight (8) assertions relative to alleged ineffective assistance of counsel at trial.

Factual Background

The following recitation of facts is taken from the decision of the Louisiana Court of Appeal for the First Circuit on direct appeal:

> On January 14, 2007, Tasha Harris was working at the Express One Stop service station on Joor Road in Baton Rouge, Louisiana, when an individual, subsequently identified as defendant, entered the store wearing a black hooded sweatshirt and blue jeans. Defendant wore the sweatshirt hood over his head and used his left hand to close the opening over his face, revealing only his eyes. Defendant approached Harris at the counter, pointed his right hand toward her, and demanded that she "give [him] the money." Harris could not actually see defendant's right hand because it was covered by the sleeve of his sweatshirt. According to Harris, the manner in which defendant held and pointed his right hand towards her led her to believe that he was armed with a

handgun.  Fearful, Harris opened the register.  Defendant then reached over and removed the cash from the register.  At that point, defendant's hand became exposed and Harris realized that he did not actually have a gun.  The defendant ran out of the store and towards a blue Dodge Ram truck.  Harris observed defendant remove the hood from his head and immediately recognized him as an individual whom she routinely witnessed loitering outside the store.

 Harris immediately contacted the police and provided a description of defendant and the vehicle.  Shortly thereafter, Lieutenant Daniel Sonnier of the East Baton Rouge Parish Sheriffs Office observed a vehicle matching the description and initiated a traffic stop.  Harris was then transported to the scene of the traffic stop where she immediately identified defendant as the individual who robbed her.

*State v. Roper*, 57 So.3d 609, 2011 WL 2119855, *1 (La. App. 1st Cir. 2011).

## Procedural History

The petitioner was charged, by Bill of Information filed in February, 2007, with one count of first degree robbery.  After a jury trial conducted in February, 2008, the petitioner was convicted in connection with that offense.  The prosecution thereafter signified its intent to charge the petitioner as a multiple offender and, after a hearing conducted on September 24, 2008, the petitioner was found to be a second felony offender and was sentenced to serve forty (40) years in confinement, without the benefit of probation, parole or suspension of sentence.

The petitioner appealed his conviction, asserting through counsel that (1) the evidence was insufficient to support the verdict, and (2) the sentence was excessive.  On February 11, 2011, the Louisiana Court of Appeal for the First Circuit affirmed the conviction, the multiple offender adjudication, and the sentence.  *See State v. Roper, supra,* 57 So.3d 609.  The petitioner thereafter sought supervisory review before the Louisiana Supreme Court, and that Court denied review, without comment, on September 23, 2011.  *See State v. Roper,* 69 So.3d 1154 (La. 2011).

The petitioner thereafter filed in the state trial court, on or about October 12, 2011,[1] a post-conviction relief application ("PCR").[2] In the memorandum submitted in support of that application, entitled "Memorandum in Support ... and Request for Documents Under Particularized Need," the petitioner identified the "Issues Presented" as follows:

> 1) Ineffective Assistance of Trial Counsel: The Trial Counsel was ineffective for failure to subject the State's case to the adversarial testing process ....
>
> 2) Ineffective Assistance of Trial Counsel: Counsel was ineffective ... when counsel failed to object to the admissibility of other crimes evidence used by the State concerning the petitioner's past before the Jury.
>
> 3) Ineffective Assistance of Trial Counsel: The Trial Counsel was again ineffective for failure to present mitigating defense in his client's behalf.... [and] when he failed to use Impeachment Strategy during Trial.
>
> 4) The Trial Counsel was ineffective for failure to file a Motion for Post Judgment of Acquittal and Motion for New Trial, when the Verdict was Contrary to the Law and Evidence, where the evidence was insufficient to sustain conviction.
>
> 5) The Trial Counsel was ineffective for failure to object to the State's failure to present sufficient evidence as to essential elements of the charged offense.

---

1. Although the petitioner's application for post-conviction relief was docketed as filed in the state trial court on October 31, 2011, the United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a *pro se* petitioner's state court filings. Accordingly, pleadings submitted by a habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012). Thus, inasmuch as the petitioner apparently signed his state court application on or about October 12, 2011, and presumably gave it to prison officials for mailing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of the petitioner's various pleadings in the state courts and in this Court, the Court will utilize the dates that the petitioner apparently signed his respective pleadings as the dates of filing thereof in the respective courts, unless otherwise noted.

2. The petitioner had earlier filed a similar application for post-conviction relief in March, 2011, but that application was denied as premature because the petitioner's direct appeal was not yet final.

> 6) The Trial Counsel was ineffective for failure to object to the improper and unconstitutional jury instructions to the charged offense.
>
> 7) The Trial Counsel was ineffective for failure to object to the State's failure to provide race-neutral for it's striking of blacks and Hispanics jurors from the jury panel .... [and]
>
> 8) The Trial Counsel failed to object to the Cumulative Effect of Constitutional Errors Committed before, during and after this defendant's trial ....

Notwithstanding the foregoing identification of the "Issues Presented," the petitioner's supporting memorandum failed to provide any significant argument or authority relative to the substantive claims of ineffective assistance and failed to provide any factual detail (beyond the petitioner's mere opinion or belief) regarding the alleged misconduct of his attorney at trial or the manner in which such misconduct may have prejudiced his defense. Instead, the petitioner devoted the entirety of his argument principally to an issue he identified as "Claim No. 1," contending in connection therewith that he was "Denied his Constitutional Rights to Appellate Review and to a Complete Copy of the Record." Specifically, the petitioner asserted in the memorandum that he had not been provided with a copy of the state court record, including pertinent transcripts, and that in its absence he was unable to effectively present his claims. He requested that a copy of the record and transcripts be provided (or loaned) to him so that he could clarify the ineffective assistance claims raised. He further asserted that the State was obligated to provide him with free copies thereof, relying principally upon state law, specifically Article I, Section 19, of the Louisiana Constitution and *State ex rel. Bernard v. Criminal District Court Section "J",* 653 So.2d 1174 (La. 1995), which decision addresses the entitlement of criminal defendants to free copies of transcripts and other record documents under state law on collateral review. To this end, the petitioner explicitly identified his PCR application as being an "Application for *Ex Rel Bernard* Post Conviction Relief," and he stated therein, as he now does

before this Court, that "this Writ Application, is being made pursuant to *State ex rel. Bernard v. Criminal District Court Section 'J'." See* R. Doc. 1-1 at p. 7. In connection with his substantive claims of ineffective assistance, however, the petitioner has provided only conclusory statements based upon his "very vague" recollection of the trial proceedings and his "opinion" that his trial attorney was deficient in (1) failing to object to the State's excessive use of peremptory exceptions, (2) failing to challenge the State's discriminatory exclusion of jurors based upon race, (3) failing to object to the admission of "other crimes" evidence, (4) failing to present mitigating evidence, (5) failing to utilize an "impeachment strategy" or subject the State's case to adversarial testing, (6) failing to object to improper jury instructions, and (7) generally failing to challenge the sufficiency of the evidence through post-trial motions or by pointing out the cumulative effect of errors at trial.

In response to the petitioner's post-conviction relief application and associated request for transcripts and documentation, the state court Commissioner entered an Order on April 4, 2012, directing the State to file a response, including any procedural objections that the State might have. The State responded on May 9, 2012, with a "Motion to Deny Production of or Access to Record and Motion to Dismiss PCR Application as Procedurally Barred," asserting therein that the petitioner had failed to show a particularized need for free copies of trial transcripts or the state court record, specifically because he had failed to show "with reasonable particularity the factual basis" for his constitutional claims. The State further asserted that the petitioner's eight specific claims of alleged ineffective assistance were mere "shell" claims that did not warrant substantive consideration and were therefore subject to dismissal on procedural grounds as conclusory. Although the petitioner thereafter filed an opposition to the State's response, his opposition complained only of the purported lateness of the response and did not

provide any further legal or factual development in connection with the substantive claims of ineffective assistance.

On September 21, 2012, the state court Commissioner issued a Report recommending that the petitioner's application be dismissed in its entirety. In doing so, the Commissioner first found that the petitioner had not been denied a right to *appellate* review of his conviction and sentence but had, to the contrary, exercised his right of appeal through appointed counsel who, after a review of the designated record on appeal, had argued appropriate errors of law and fact before the state appellate court. The Commissioner noted in this context that (1) there was nothing in the record to indicate that the petitioner's appellate attorney had not been provided with an adequate copy of the trial court record, and (2) the petitioner had failed to identify any portion of the designated appellate record that should have been transcribed or was needed for an identification or review of his appellate claims. The Commissioner next concluded that the petitioner, on post-conviction review, had failed to show a sufficient particularized need for a copy of the trial transcripts or other documentation, quoting *State ex rel. Bernard, supra*, and the requirement that, in order for a petitioner to obtain a free copy of portions of the trial court record, he must "specify with reasonable particularity the factual basis" for his claims for relief. In reaching this conclusion, the Commissioner specifically found that the petitioner's request for transcripts and documentation relied only upon "vague allegations" of constitutional error and therefore amounted to no more than "a fishing expedition" and an improper attempt to "comb the record for errors." Thus, the Commissioner found that the petitioner's request was "lacking in sufficient facts to warrant production of documents." Finally, the Commissioner addressed the petitioner's substantive claims and found them to be deficient, both procedurally and factually. In doing so, the Commissioner explicitly found that the petitioner's claims of ineffective

assistance of counsel were "without supporting facts [and] do not warrant any relief." The Commissioner also briefly addressed the substance of most of the petitioner's claims, noting the clear absence of merit and the lack of specificity therein, as follows:

> The Petitioner states that he is of the opinion that the State used more than the twelve peremptory challenges allowed ..., but this allegation is refuted by the record which reflects the use of [only] six total challenges ... by the State.
>
> \* \* \* \*
>
> The Petitioner also suggests that ... counsel was ineffective for failing to raise a *Batson* challenge ... but the record in this case indicates that Defense Counsel did make a *Batson* challenge, and the Court ordered the State to provide race neutral reasons for certain of the peremptory challenges.
>
> \* \* \* \*
>
> The Petitioner also states that he believes that evidence of other crimes was erroneously admitted, but he does not identify what prior acts were allegedly presented.
>
> \* \* \* \*
>
> He claims counsel failed to impeach witnesses but does not identify any witness that could have been impeached or any witness [who] may have made an inconsistent statement, much less alleging how the outcome of the proceeding was adversely affected by counsel's alleged omissions.
>
> \* \* \* \*
>
> [H]e also contends that ... counsel should have objected to the jury instructions. Again, his allegations are vague and not factually supported.... The Petitioner does not identify the alleged errors in the instructions.
>
> \* \* \* \*
>
> In sum, the Petitioner does not present sufficient facts to support a finding that any action/inaction on the part of his attorney fell below objective standards of reasonableness demanded of attorneys in criminal cases.

Whereas the petitioner filed a Traversal in response to the Commissioner's Report, the referenced Traversal again challenged only the court's refusal to order production of the state court record and did not further address the substance of the petitioner's constitutional claims. In addition, after the denial of his PCR application by the state trial judge,[3] the petitioner sought further review before the Louisiana appellate courts, but his writ applications before those courts

---

3. This Court has not located in the state court record a copy of the trial judge's Ruling denying the petitioner's PCR application. Notwithstanding, the Court concludes that the absence of that Ruling is not essential to the resolution of this matter.

7

again did no more than reiterate his asserted need for a copy of record documentation to support his claims. On February 13, 2013, the Louisiana Court of Appeal for the First Circuit denied review of the petitioner's claims (with one judge dissenting), and on July 31, 2013, the Louisiana Supreme Court also denied review, without comment. *See State ex rel. Roper v. State*, 118 So.3d 1119 (La. 2013).

Finally, on or about August 27, 2013, the petitioner filed the instant application for habeas corpus relief in this Court.

## Legal Analysis

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor, supra*, 529 U.S. at

409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Petitioner's Claim That His Constitutional Rights
Were Violated By The Trial Court's Failure To Provide Free Copies
Of The State Court Record And/Or Trial Transcripts Is Without Merit

With regard to the petitioner's over-arching contention that the state courts erred by failing to provide him with a copy of the state court record at public expense, the Court concludes that this claim is without merit. First, whereas an indigent criminal defendant, *on direct appeal,* has an absolute right to a copy of the trial transcript or to an alternative device that fulfills the same function, *see Griffin v. Illinois*, 351 U.S. 12, 18-20 (1956), it is well-recognized that such defendant is not *personally* entitled to receive a copy of the transcript if his attorney has been provided with one. *See Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973); *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973). *See also Yates v. Collins*, 988 F.2d 1210, *1 (5th Cir. 1993). The petitioner makes no assertion in the instant case that his appellate attorney was not provided with access to the state court record or to a copy of the designated trial transcripts, and there is no assertion that the record on appeal was incomplete or deficient in any respect.[4]

---

4. It appears from the state court record that on September 24, 2008, the petitioner's trial attorney filed a Motion for Appeal and Designation of Record, Tr. Rec. p. 130, designating both the trial and sentencing proceedings as the pertinent parts of the record for appellate review. The trial court thereafter granted the Motion for Appeal on April 26, 2010, setting a return date in the appellate court of July 6, 2010, and directing the court reporter to prepare and file the designated trial transcripts into the record on or before June 14, 2010. *See* Tr. Rec. p. 143. It further appears that the designated transcripts of both the sentencing and trial were thereafter filed into the record on May 14, June 28 and July 2, 2010, respectively, and were available to the petitioner's appellate counsel for review.

Accordingly, there is no basis for concluding in this case that the petitioner was deprived of his right to an effective appeal through a qualified attorney acting on his behalf.

In contrast to the foregoing, the law is clear that an indigent criminal defendant does *not* have an absolute right under federal law to a copy of trial transcripts or other record documents in connection with post-conviction or other collateral review proceedings. Instead, a petitioner must show both that the claims that he seeks to raise on collateral review are not frivolous and that he requires the documentation to establish the validity of those claims. *See Yates v. Collins, supra,* 988 F.2d at 1210 ("[A]n indigent defendant is not entitled to a free transcript if he had access to the record on direct appeal and fails to demonstrate that he requires the record to establish a non-frivolous post-conviction claim"); *Smith v. Beto*, *supra*, 472 F.2d at 165 (affirming the lower court's finding that there was no constitutional violation where the petitioner's attorney had access to the state court record and trial transcripts on direct appeal and where "the petitioner did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial"). *See also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (same). *Cf., United States v. MacCollom*, 426 U.S. 317, 325-26 (1976) (concluding that a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts).

The petitioner's state court PCR application in this case included a request for a free (or borrowed) copy of pertinent portions of the state court record for the purpose of pursuing his post-conviction claims, and he asserted therein that he had a "particularized need" for same. The state court Commissioner rejected this contention, however, finding that the petitioner was conducting a mere "fishing expedition" based upon vague and conclusory assertions, that he had

not shown a sufficient particularized need, and that his request was "lacking in sufficient facts" to support the relief requested. To the extent that this determination was based upon an interpretation and application of state law, *i.e.*, *State ex rel. Bernard, supra*, it is not the province of this Court to review same. *See Hills v. Cain*, 2015 WL 1004197, *8 (M.D. La. March 6, 2015) (rejecting a petitioner's claim regarding the state court's failure to provide a copy of the state court record). Further, to the extent that the petitioner seeks to rely upon federal law in seeking copies of the referenced transcripts and documentation, he has failed to show that the state courts erred in their resolution of the petitioner's request. Specifically, in light of the lack of specificity in the petitioner's request and his complete failure to show that his claims had potential merit and were not frivolous, this Court finds no unreasonable application of federal law in the state court's refusal to provide him with free copies of the requested documentation. *See Hernandez v. Cain*, 2015 WL 1810822, 10 (E.D. La. April 20, 2015) (finding no merit to a petitioner's claim regarding a failure to provide copies of transcripts for collateral review because "the unsubstantiated nature of the ineffective assistance of counsel claims, ... all of which are meritless, vague, and conclusory," failed to meet the petitioner's "burden of showing particularized need"); *Parks v. Cain*, 2014 WL 505329, *17 (E.D. La. Feb. 6, 2014) (finding that the petitioner had "failed to satisfy his burden of proof regarding his alleged need for a transcript"); *Williams v. Warden*, 2013 WL 4413743, *5 (W.D. La. Aug. 15, 2013) (finding, in response to a petitioner's complaint regarding the denial of a copy of trial transcripts, that because a habeas petitioner has no constitutional right to state post-conviction review, any "alleged infirmities in the review process do not raise a constitutional issue cognizable in a federal habeas application"). According, the Court concludes that this claim is subject to dismissal as being without merit.

## The Petitioner's Claim That He Was Denied
## Effective Assistance Of Counsel At Trial Is Without Merit

Turning to the petitioner's substantive assertions regarding the alleged ineffective assistance of his counsel at trial, the Court notes that a habeas petitioner who contends that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient," *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter, supra*, 796 F.2d at 817. Great deference is afforded to counsel's exercise of professional judgment. *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860

F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington, supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter, supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Applying the foregoing standard, the Court finds that the petitioner has failed to meet his burden of overcoming either the "strong presumption" that his attorney's conduct fell within the wide range of reasonable professional competence or the "great deference" that is generally afforded to the exercise of an attorney's professional judgment. Nor has the petitioner made any showing whatever that, but for counsel's alleged errors, the result of the proceeding would have been different. To the contrary, the petitioner has provided only conclusory statements regarding the alleged deficient conduct of his attorney and has provided virtually no argument or legal authority in support of his conclusory accusations and contentions in this regard. As noted above, the petitioner's argument before the state courts and before this Court has been limited almost exclusively to his claim regarding the purported need for a copy of the state court record and trial transcripts. It is also illuminating to note that the petitioner's prayer for relief before

this Court does not seek a reversal of his conviction or sentence but, instead, seeks only an Order directing the state court to provide him with a "complete copy of the trial record ... whereby petitioner may obtain adequate assistance in preparing his Application for Post Conviction Relief." *See* R. Doc. 1-1 at pp. 12-13. Finally, the petitioner's bare-bones assertions regarding his attorney's alleged deficient conduct, without any factual details or supporting argument whatever, effectively provides this Court with nothing to review. In this regard, the failure of a petitioner to adequately brief or argue his claims before this Court is an adequate basis for the Court to find that the claims have been waived or abandoned. *See Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005) (finding that a petitioner's claims were waived on appeal where he failed to adequately brief them and "merely list[ed] his ineffective assistance complaints in summary fashion, without discussing the legal and factual basis for each complaint"); *Newbury v. Thaler*, 2010 WL 3704028, *5 (N.D. Tex. Sept. 21, 2010) (finding waiver where the petitioner "set[] forth no argument or caselaw" to support his contentions regarding ineffective assistance); *Berry v. Epps*, 2006 WL 2865064, *5 (N.D. Miss. Oct. 5, 2006) (same, where the petitioner's argument was "conclusory and without requisite specificity"); *Marshall v. Dretke*, 2005 WL 1562695, *8 (S.D. Tex. June 29, 2005) (same, where "[n]owhere in [his] pleadings does it appear petitioner has presented any factual or legal analysis or argument in support for [his] proposition"). Moreover, this Court is not required to scour the record to determine the factual basis for a petitioner's claims when the factual basis is not made clear from his pleadings. *See Perez v. Johnson*, 122 F.3d 1067, *1 (5th Cir. 1997) ("[W]e do not require courts to scour the record for factual issues that might support a *pro se* litigant's position; it is that litigant's obligation to direct the court's attention to the relevant evidence"); *Lively v. Director, TDCJ-CID*, 2014 WL 4404512, *11 (E.D. Tex. Sept. 4, 2014) (same). In the instant case, the petitioner has provided

no factual support for his contentions and has, instead, utilized mere buzzwords and catch-phrases in asserting that his trial attorney (1) failed to subject the State's case to "adversarial testing," (2) failed to object to improper "other crimes evidence," (3) failed to present a "mitigating defense" or "use Impeachment Strategy," (4) failed to file post-trial motions, (5) failed to challenge the lack of "sufficient evidence," (6) failed to object to "unconstitutional jury instructions," (7) failed to challenge the alleged race-based removal of potential jurors, and (8) failed to object to alleged "Cumulative ... Errors." Accordingly, on the basis of the record presented and upon the failure of the petitioner to provide any argument, authority, or factual specificity in support of his claims, this Court finds that the petitioner has failed to adequately present his claims of ineffective assistance before this Court and further finds that there was no unreasonable application of federal law in the determination by the state courts that the petitioner's claims were without merit. The petitioner's habeas corpus application should therefore be dismissed.

## Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be dismissed, with prejudice, as being without merit. It is further recommended that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on May 27, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WILLIAM J. ROPER (#502233)**  CIVIL ACTION

**VERSUS**

**STEVE RADER, WARDEN**  NO. 13-0572-JWD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 27, 2015.

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**